370 F.2d 264
 Edgar T. WEEKES et al., Appellants,
v.
ATLANTIC NATIONAL INS. CO., Appellee.
CALIFORNIA STATE AUTO ASSOCIATION et al., Appellants,
v.
ATLANTIC NATIONAL INS. CO., Appellee.
ATLANTIC NATIONAL INS. CO., Appellant,
v.
CALIFORNIA STATE AUTO ASSOCIATION et al., Appellees.
 No. 20245.
 United States Court of Appeals Ninth Circuit.
 December 20, 1966.
 
 Robert G. Begam, of Langerman, Begam & Lewis, Phoenix, Ariz., for appellant and appellee Weekes.
 John J. O'Connor, III, of Fennemore, Craig, Allen & McClennen, Phoenix, Ariz., for appellants and appellees California State Auto Ass'n Inter-Ins. Bureau and Samuel Rotanzi.
 Mark Wilmer, of Snell & Wilmer, Phoenix, Ariz., for appellee and appellant Atlantic Nat. Ins. Co.
 Before MERRILL, KOELSCH and DUNIWAY, Circuit Judges.
 DUNIWAY, Circuit Judge:
 
 
 1
 In this action for declaratory relief, in which jurisdiction is based upon diversity of citizenship, there are three appeals. The action was begun by Atlantic National Insurance Co. (Atlantic). The defendants are California State Automobile Association Inter-Insurance Bureau (California), Samuel Rotanzi (Rotanzi) and Edgar T. Weekes and Catherine H. Weekes, husband and wife, (the Weekes). The facts are not disputed, and the court entered a summary judgment, from various parts of which the Weekes, California and Rotanzi, and Atlantic appeal.
 
 
 2
 The action arose out of an automobile accident occurring in Arizona. Rotanzi rented a car from Hertz Corporation. There was a collision between that car, driven by Rotanzi, and a car owned by the Weekes. For the purposes of this case, it is stipulated that at the time, Rotanzi was under the influence of intoxicating liquor. The accident occurred on April 20, 1961. On June 26, 1961, the Weekes filed an action in the federal district court claiming personal injury damages exceeding $160,000. In February, 1963, the parties agreed to hold that action in abeyance, to await the outcome of a declaratory judgment action to be filed thereafter. On March 22, 1963, Edgar Weekes filed suit in Arizona Superior Court against Rotanzi, claiming damage to his car; the present suit which is the declaratory judgment action that had been agreed upon, was filed by Atlantic about October 1, 1963, issue finally being joined upon the second amended complaint filed November 20, 1964. The car damage action was settled in October, 1963, and a stipulation was filed in that action on October 22, 1963. Pursuant to that stipulation, the car damage action was dismissed with prejudice upon payment to Weekes of $1,101.52, the exact amount prayed for in the complaint. The purpose of the present suit was to determine questions of insurance coverage. It was on file but had not come to issue when the property damage action was settled.
 
 
 3
 Atlantic had issued a policy of insurance to Hertz Corporation, affording liability insurance to persons leasing Hertz cars. In this action, in its second amended complaint, Atlantic claimed:
 
 
 4
 1. that the disposition of the car damage action makes it a bar to the personal injury action;
 
 
 5
 2. that the coverage issued by California to Rotanzi is primary and Atlantic's coverage, if any, is secondary, and
 
 
 6
 3. that coverage was not afforded to Rotanzi because the policy excludes coverage if the accident occurs "while [the car is] being operated * * * by any person under the influence of intoxicants * * *," or, alternatively, that this exclusionary clause should at least reduce Atlantic's liability to a maximum of $10,000 per person and $20,000 per accident. The policy limits are $100,000 and $300,000.
 
 
 7
 California had issued a policy of liability insurance to Rotanzi. Both California and Rotanzi asserted: (1) that the disposition of the car damage action makes it a bar to the personal injury action; (2) that Atlantic's coverage is primary, or, alternatively, that the two insurers should participate in proportion to the respective limits of their policies; and (3) that Atlantic's liability is neither excluded nor limited by its exclusionary clause.
 
 
 8
 The Weekes asserted that the disposition of the car damage case does not make it a bar to the personal injury action, that Atlantic's liability is neither excluded nor limited, that California is also liable for Rotanzi's conduct, and that both Atlantic and California should be required to pay the full amount, up to their full policy limits, of the Weekes' personal injury claims.
 
 
 9
 All parties moved for summary judgment. The court's judgment on these motions is to the following effect (the numbering follows the numbering in the judgment):
 
 
 10
 1. The disposition of the car damage action does not make it a bar to the personal injury action.
 
 
 11
 2. A. Coverage of Rotanzi by Atlantic's policy is not excluded.
 
 
 12
 B. The limits of Atlantic's coverage of Rotanzi are $10,000 for one injury, $20,000 for one accident.
 
 
 13
 C. Atlantic's coverage is primary.
 
 
 14
 D. California's coverage is excess.
 
 
 15
 The Weekes appeal from paragraph 2B: Atlantic appeals from paragraphs 1, 2A, 2C, and 2D; California and Rotanzi appeal from paragraphs 1 and 2B. We consider these appeals according to their subject matter.
 
 
 16
 1. The effect of the settlement of the car damage case.
 
 
 17
 An affidavit submitted in behalf of the Weekes, in support of their motion for summary judgment, shows that in February, 1963, about two years after the personal injury action was filed, the parties agreed that it be "held in abatement" pending disposition of a declaratory judgment action to be filed. In March, 1963, without the knowledge of the attorney who represented the Weekes in the personal injury action, Mr. Weekes, through another attorney, filed the car damage action. Counsel for Mr. Weekes in the car damage case was retained by Allstate Insurance Company. This was a "subrogation" action. Allstate, however, was not named as a plaintiff. The terms of its subrogation rights, if any, are not stated. It does not appear that Allstate paid for the damage to the car, or that Weekes assigned his car damage claim to Allstate, or whether the Allstate policy required that he do so. That policy is not in the record.
 
 
 18
 The present declaratory judgment action was filed October 1, 1963. Atlantic is represented by different counsel from counsel who were acting for it as Rotanzi's counsel in both the car damage and personal injury actions. During October, 1963, counsel for both sides in the car damage action agreed to settle and stipulated to its dismissal, with prejudice. An order to that effect was entered October 22, 1963. Not until October 26 did the attorney representing Weekes in the personal injury action learn of this stipulation and dismissal. He learned of it when Weekes brought him a settlement draft containing a full release. The attorney advised Weekes not to sign. After some correspondence with Atlantic's attorney and the attorney chosen by Allstate to represent Weekes in the car damage case, a new draft, not containing the release, was issued and Weekes' counsel in the personal injury case advised Weekes to accept it, which he did. Certain correspondence between Weekes' attorney in the car damage case, and Atlantic's attorney in that case and the personal injury case, is set out in the margin.[1]
 
 
 19
 Atlantic, California and Rotanzi all urge that the stipulated dismissal in the car damage case is res judicata here. Their argument is in substance as follows: Arizona adheres to the single cause of action rule.[2] In negligence cases the cause of action lies in defendant's breach of duty, and where, as here, that breach causes both personal injury and property damage, there is still but one cause of action.[3] The result of the rule is that if the injured party brings separate actions for personal injury and for property damage, and judgment is for the defendant in either of them, that judgment is res judicata as to the other action, and a bar to its further prosecution.[4] The Arizona court has said that where two cases based on the same cause of action are filed, this result follows, regardless of which action was first commenced.[5]
 
 
 20
 Dismissal with prejudice is an adjudication on the merits, in favor of the defendant.[6] Here, the property damage case was dismissed with prejudice by stipulation of the parties.[7] This, say appellants, was an adjudication on the merits against Edgar Weekes,[8] and is therefore res judicata in the personal injury case, which must be dismissed.[9] This is particularly true here, they say, because the settlement was completed with full knowledge of the facts. The attorney for Atlantic, representing Rotanzi in both the car damage and the personal injury cases, expressly reserved whatever rights the dismissal might confer; the attorney for the Weekes in the personal injury case knew this and took his chances, based upon his own view of the law. He — and therefore his clients — are bound by the legal result of what he permitted them to do. No fraud was perpetrated.
 
 
 21
 So far as appears from this record, none of the foregoing applies to Mrs. Weekes. She was not a party to the property damage case. The only case in which any cause of action of hers is asserted is the personal injury case. Her rights in the personal injury case, therefore, have not been adjudicated.
 
 
 22
 As to Mr. Weekes, the result demanded by the appellants hardly squares with any conceivable notion of justice. The car damage case was brought by an attorney chosen by Allstate, using Weekes' name. His personal injury attorney did not even know that it had been filed, much less that it had been settled and dismissed, until after it was dismissed. At that point the matter was brought to his attention, and he objected to the release that Weekes was asked to sign. The release was then withdrawn by the attorney who represented both Rotanzi and Atlantic in both cases.[10]
 
 
 23
 It is quite true that if Arizona law compels the result sought by appellants we must follow it, leaving Mr. Weekes to whatever remedies he may have against those who led him, or allowed him to proceed, down the road to disaster. Counsel suggest that there are two routes whereby Weekes can escape — the so-called "subrogation case" route, and the "consent" route. The subrogation exception to the rule against the splitting of a single cause of action has been recognized where the property element of the damages alleged in an accident case is covered by insurance. The insurer, under the terms of the insurance contract or upon paying off its obligation to the insured and taking an assignment, is seen, in effect, as the holder of a separate cause of action for the property damage. Hence the insurer's suit for reimbursement from the defendant does not bar the injured party's action for personal injury damages. The consent exception merely recognizes that the rule against splitting is for the benefit of the defendant and that he must timely object to the splitting.[11] Appellants assert that the Arizona court has not opened the gate to either route. This is true, but it is also true that it has never considered whether it ought to. Other courts, confronted with similar arguments, have opened the gate to one or the other of them.
 
 
 24
 On the record before us, we cannot support taking the "subrogation case" route. The affidavit of the Weekes' attorney in support of their motion for summary judgment is totally insufficient. It merely alleges two things: (1) that the attorney for Mr. Weekes in the car damage case was retained by Allstate, Weekes being the nominal plaintiff, and (2) that the action was a "subrogation action." Item (2) is nothing but a legal conclusion. Rule 56(e) requires "such facts as would be admissible in evidence." No such facts are alleged, as to the subrogation issue. There is no allegation that Allstate had insured anything, much less any proof of the terms of any Allstate policy. We cannot indulge in any presumptions as to its existence or its terms. Nor can we presume that Allstate had become subrogated to Mr. Weekes' rights under common law or equity principles when the car damage action was filed. There is no evidence that at that time Allstate had paid anything. See 46 C.J.S. Insurance § 1209, pp. 152-160. Indeed, there is no evidence that Allstate ever paid anything. All that was shown was that the settlement check was payable to and endorsed by Weekes and his attorney, and was also endorsed by Allstate. A counter affidavit establishes that the car damage case was filed in Weekes' name alone, and that the complaint contained no allegations whatever about any rights of Allstate to recover anything.
 
 
 25
 No case has been cited to us that opens the gate to the subrogation case route under such circumstances. Every case having comparable facts refuses to open the gate.[12] In every case in which the gate has been opened, the insurance company-subrogee was the party to the car damage case and its rights were the rights litigated in that case.[13] In every such case, the insurance company had paid off, and was an assignee of the car damage claim, either by operation of law or by express assignment. In every such case, the car owner was not a party to the car damage case. And these were the facts held to be controlling.
 
 
 26
 We turn then, to the gate to the "consent" route. We are convinced that the Arizona courts would open that gate, but the problem is whether it leads to a culde-sac. The one cause of action rule, and its result, the rule against splitting causes of action, are for the benefit of the defendant — to prevent his being harassed by multiple lawsuits.[14] It would seem to follow that, if the defendant does not object, in either case, to the splitting of the cause of action, he will be held to have waived the point.[15]
 
 
 27
 The rule against splitting and the reasons for it, and the consent exception, are well stated in Restatement, Judgments, § 62:
 
 
 28
 "§ 62. SPLITTING CAUSE OF ACTION — JUDGMENT FOR PLAINTIFF OR DEFENDANT.
 
 
 29
 "Where a judgment is rendered, whether in favor of the plaintiff or of the defendant, which precludes the plaintiff from thereafter maintaining an action upon the original cause of action, he cannot maintain an action upon any part of the original cause of action, although that part of the cause of action was not litigated in the original action, except * * *.
 
 
 30
 "(c) where the defendant consented to the splitting of the plaintiff's cause of action.
 
 
 31
 
 "Comment:
 
 
 
 32
 a. Rationale. The rule stated in this Section is based on the idea that where a person has a single cause of action, in the interests of convenience and economy to the public and to the defendant he should be entitled to but one right of action and hence should be required to unite in one proceeding all matters which are part of it.
 
 
 33
 * * * * * *
 
 
 34
 "Comment on Clause (c):
 
 
 35
 m. Consent of defendant. The purpose of the rule stated in this Section is to protect the defendant from being harassed by several actions based upon a single cause of action. It is not applicable where the defendant consents, in express words or otherwise, to the splitting of the cause of action.
 
 
 36
 * * * * * *
 
 
 37
 "Where the plaintiff brings separate actions based upon different items included in his claim, and in none of the actions does the defendant make the objection that another action is pending based upon the same claim, a judgment for the plaintiff in one of the actions does not preclude him from obtaining judgment in the other actions. In such a case the failure of the defendant to object to the splitting of the plaintiff's claim is effective as a consent to the splitting of the claim."
 
 
 38
 We agree, and we think that the Arizona courts would agree. Why, then, can it be said that the "consent" gate leads to a cul-de-sac? Because here, even though the defendant did not object to splitting the cause of action, there was a judgment, on the merits and in favor of the defendant, in the car damage case. It will be noted that the comment on clause (c), quoted above, is limited to the case in which the plaintiff obtains a judgment in one of the cases.[16] The first Comment in the Restatement, dealing with the rationale, which is also quoted above, indicates that the reference to the plaintiff in the above Comment is deliberate. The last paragraph of the first Comment reads:
 
 
 39
 "The rule stated in this Section is applicable whether the judgment is for the plaintiff or for the defendant, irrespective of the issues raised in the case, provided only that where the judgment is for the defendant it is upon the merits as stated in § 48, and hence is one which would bar the plaintiff from maintaining another action upon the original cause of action."
 
 
 40
 It is argued from this that if defendant gets judgment in one of the cases, on the merits, his waiver or consent to the splitting of the cause of action does not extend to a waiver of the res judicata effect of his judgment.[17] This is said to be made clear by Section 48 of the Restatement, to which the foregoing Comment refers. It says:
 
 
 41
 "§ 48. JUDGMENT FOR DEFENDANT ON THE MERITS — BAR.
 
 
 42
 Where a valid and final personal judgment is rendered on the merits in favor of the defendant, the plaintiff cannot thereafter maintain an action on the original cause of action."
 
 
 43
 And, as the cases cited in note 6, supra, show, the dismissal with prejudice of the car damage case was an adjudication on the merits in favor of Rotanzi. Hence it is urged that it cannot be said that Rotanzi or Atlantic waived the possible res judicata effect of the dismissal with prejudice of the car damage case, that, on the contrary, they expressly asserted their rights, and offered Weekes an alternative, which his attorney elected not to accept.
 
 
 44
 The Weekes urge that the dismissal was in favor of Rotanzi as a matter of form only, that in substance it was a judgment in favor of Mr. Weekes, who received the full amount prayed for in his complaint. The same, however, can be said of any case in which the defendant settles and the action is dismissed with prejudice, as occurred in several of the cases cited in note 6, supra. It can be said that Weekes is here attempting a collateral attack upon the car damage judgment, and that this he cannot do.[18]
 
 
 45
 We need not, and do not, decide this question, however. We assume that the dismissal is res judicata. In presenting their argument, both sides have failed to consider the effect of the Arizona Rules of Civil Procedure, 16 A.R.S., and of the Federal Rules of Civil Procedure. Arizona Rule 8(d) requires that all matters constituting an avoidance or affirmative defense be pleaded. The plea of another action pending is clearly within the rule. No such pleading was filed in the car damage case, although the personal injury case had been pending for more than two years. Under Rule 12(i), it was waived. This, we think, is "consent" within the meaning of the consent rule. Thus there was consent to the splitting of the single cause of action.
 
 
 46
 When the car damage case was settled, the personal injury case had been pending in the Federal court for over 2 years. Under F.R.Civ.P. 8(c), res judicata must be pleaded; if not so pleaded, it is waived, Rule 12(h).[19] Here, it can only be raised by supplemental answer under Rule 15(d), since the settlement occurred long after the personal injury suit was filed. Such a pleading can be filed only on motion, and the court "may" permit it, "upon such terms as are just."[20] So far as appears, no motion for leave to file a supplemental answer has ever been filed in the personal injury case. We think that the attempt to raise the defense in this case should be treated as if it were a motion for leave to file a supplemental answer in the personal injury case. In substance, the court denied a motion for leave to file a supplemental answer in the personal injury case. We think that it did not abuse its discretion in so doing.
 
 
 47
 A motion for permission to serve and file a supplemental pleading is addressed to the sound discretion of the court.[21] The fact is that in the car damage, case Weekes recovered, by settlement, exactly what he prayed for in his complaint. The dismissal with prejudice was a substitute for a judgment in Weekes' favor and a satisfaction of that judgment. The latter would have the same legal effect as a release of the car damage claim, but would not, under the consent exception, bar the personal injury action. The only purpose that the dismissal with prejudice should be given is the same, to release the car damage claim by its dismissal. There is nothing in the record to support conclusion that any party to the stipulation believed that the personal injury claim was in fact being settled. The correspondence quoted above makes this clear. Before the settlement was completed, the appealing parties eliminated from the settlement check language that would have released the personal injury claim. The check was accepted only after that language was removed. Thus the paying parties paid when they knew that the receiving party intended to settle only the car damage claim. To uphold the contention that the dismissal is res judicata would certainly work an injustice. We hold, as we think that the Arizona courts would hold, that to permit the raising of the defense would work an injustice, and that the court did not abuse its discretion in revising to permit it. The Arizona Supreme Court has gone out of its way to avoid applying the doctrine of res judicata "so rigidly as to defeat the ends of justice."[22] We think that that is what it would do here.[23] Paragraph 1 of the judgment is correct.
 
 
 48
 2. The Effect of the "Intoxicants" Exclusion.
 
 
 49
 It is not seriously contended that the exclusion of liability in the Atlantic policy is effective to permit Atlantic to escape all liability. The State of Arizona has a Financial Responsibility law that appears to invalidate the exclusion. In the light of the decision in Jenkins v. Mayflower Ins. Exch., 1963, 93 Ariz. 287, 380 P.2d 145, we think that the Arizona courts would strike down the exclusion. Paragraph 2-A of the judgment is correct.
 
 
 50
 3. The limits of Atlantic's liability.
 
 
 51
 The Atlantic policy limits are $100,000/$300,000. The Financial Responsibility law provides, in pertinent part: A.R.S. § 28-1170, subsec. B:
 
 
 52
 "The owner's policy of liability insurance must comply with the following requirements:
 
 
 53
 * * * * * *
 
 
 54
 "2. It shall insure the person named therein or any other person, as insured, using the motor vehicle * * * with the express or implied permission of the named insured * * * subject to limits exclusive of interest and costs, with respect to each motor vehicle as follows:
 
 
 55
 "(a) Ten thousand dollars because of bodily injury to or death of one person in any one accident.
 
 
 56
 "(b) Subject to the limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident.
 
 
 57
 * * * * * *
 
 A.R.S. § 28-1170, subsec. F:
 
 58
 * * * * * *
 
 
 59
 "1. The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute when injury or damage covered by the motor vehicle liability policy occurs. * * * [A]nd no violation of the policy shall defeat or void the policy."
 
 
 60
 It is section 1170, subsec. F which nullifies the "intoxicants" exclusion.
 
 The law also provides:
 A.R.S. § 28-1170, subsec. G:
 
 61
 "A policy which grants the coverage required for a motor vehicle liability policy may also grant lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and the excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants the excess or additional coverage the term `motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section."
 
 
 62
 The appealing parties find some conflict between the provisions of sections 1170, subsec. B and 1170, subsec. G and the provisions of section 1170, subsec. F. We think that there is no conflict, and that section 1170, subsec. F nullifies the exclusion only to the extent of the limits specified in section 1170, subsec. B. To us, section 1170, subsec. G shows that this was the intent of the Arizona legislature. And there is nothing to the contrary in Atlantic's policy. It provides, with reference to State Financial Responsibility laws as follows:
 
 
 63
 "When this policy is certified as proof of Financial Responsibility for the future under the provisions of the Motor Vehicle Financial Responsibility law of any state or province, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy."
 
 
 64
 To us, this shows an intent, first, to afford the coverage required by the law, and second, to limit the amount of liability to that required by the law. The policy is thus wholly consistent with the law.
 
 
 65
 The cases on which appellants rely are not in point. None decides the precise question here presented.[24]
 
 
 66
 Paragraph 2B of the judgment is correct.
 
 
 67
 4. The primary-excess question.
 
 
 68
 The contest here is between Atlantic and California. The policy limits of each, as applicable here, are the same — $10,000/$20,000. Atlantic's policy provides:
 
 
 69
 "The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise."
 
 California's policy provides:
 
 70
 "If the insured has other insurance against the loss covered by part I of this policy the Bureau shall not be liable for a greater portion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limits of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance."
 
 
 71
 The court held that Atlantic's coverage is primary, California's excess. Atlantic attacks this conclusion by arguing that California's "excess" clause, the proviso in the language quoted above, is not here applicable. It says that the whole paragraph is ambiguous, and should be construed against California so as to bring into effect only California's pro rata clause. Other courts have not found such clauses ambiguous, nor do we.[25] It follows that we do not have here, as Atlantic asserts, a conflict between Atlantic's "excess" clause and California's "pro rata" clause. Rather, here is a conflict between two excess clauses. We find no applicable Arizona decisions, but the normal rule in such cases is that the two policies are to be applied pro rata.[26]
 
 
 72
 California, however, argues that the judgment is correct because the primary purpose of its policy is to insure Rotanzi while driving his own car, and the coverage given while he is driving another's car is incidental and intended to operate only as excess to the insurance of the owner of that car, here Hertz, while Atlantic's policy is primary because it insures Hertz, the owner.[27] In part, California relies on the contention that the excess clause in Atlantic's policy makes its coverage excess only over "other valid and collectible insurance available," while California's excess clause is not so worded.[28] Hence, it says, California's insurance is not "valid and collectible" unless the damages exceed the limits of Atlantic's policy. But California's policy also refers to other "valid and collectible" insurance in the pro rata portion of the paragraph containing the excess proviso, and, the excess language being a proviso to the pro rata provision, it also refers to other "valid and collectible" insurance. We hold that the two excess clauses offset each other, and that each insurer must bear its portion of the loss, in proportion to the limits of its policy. Paragraphs 2C and D of the judgment are erroneous.
 
 
 73
 Paragraphs 2C and D are reversed; in all other respects, the judgment is affirmed. The matter is remanded with directions to modify paragraphs 2C and D in accordance with this opinion.
 
 
 74
 The problem as to the effect of the dismissal of the car damage case should never have arisen if the Weekes' personal injury counsel had properly protected his clients' interests. His briefing of the question has been of little assistance to us on this appeal. The Weekes, therefore, although successful here as against the appeals of Atlantic, California and Rotanzi from paragraph 1 of the judgment, shall recover no costs on appeal. Atlantic shall recover one-half of its costs on appeal from the Weekes and one-half of its costs on appeal from California. Otherwise, each party shall bear its own costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 Atlantic's attorney to Weekes' car damage attorney:
 "Now, in delivering these funds to you, Bill, I want it clearly understood that we are not in any manner waiving, relinquishing or altering what legal effect, if any, the dismissal of the above captioned matter may have on your client's action that is pending in Federal Court wherein he is represented by Bob Begam. "If the foregoing is not satisfactory to you and your client, please return the enclosed check to me. We will put the above captioned cause back on the trial list and try the lawsuit at the earliest opportunity available."
 A copy was sent to the Weekes' personal injury attorney. He then wrote to Atlantic's attorney:
 "It was my understanding that Bill was representing Mr. Weekes' insurance company on their subrogation claim. I can't imagine why you refer to Mr. Weekes as being Bill's client. Nor do I understand how the property damage settlement can conceivably have any effect on the pending Federal Court actions.
 "Clearly, you can't be asking Mr. Weekes to sign a general release in order to enable his insurance company to receive compensation for their subrogation claim. I am confident that you and Bill can work this problem out without prejudicing the interest that Mr. Weekes has in processing his personal injury claim." Atlantic's attorney replied:
 "There is no mention of subrogation in the Complaint in the above captioned matter. Mr. Weekes is named as a party plaintiff and Bill Andrews indicates in the Complaint that he is his attorney as far as the lawsuit is concerned. This is why I refer to Mr. Weekes as being Bill's client in this suit.
 "I am not asking Mr. Weekes to sign anything. There has already been signed by Bill Andrews, as Mr. Weekes' counsel, a stipulation for dismissal of this cause with prejudice. My last letter to Bill was simply to point out that in paying these moneys to Bill and his client, we are fully reserving any effect that the conclusion of this litigation may have on the suits pending in Federal Court. So you see, Bob, I really have nothing to work out with Bill Andrews — either a) he accepts the money and the Stipulation and order of dismissal with prejudice stands, or b) he returns the money and we try the State action."
 Weekes' personal injury attorney then wrote to Weekes' car damage attorney and to Atlantic's attorney:
 "In any event, I want my position, and the position of Mr. Weekes, to be perfectly clear. I am not going to permit Mr. Weekes to sign any document, or endorse any draft, which might be construed as anything other than a special release of the Allstate subrogation claim. While I believe that it would be incredible for Jack or his company to take the position that something more than that has to be signed in order to resolve Allstate's claim, and while I am convinced that Allstate's property damage claim is a perfectly valid one, I am afraid that you and Jack will have to work the matter out the best way you can without imposing on Mr. Weekes and his Federal Court action. Mr. Weekes will, as he has in the past, cooperate with Allstate in every way short of prejudicing his far more substantial personal injury claim."
 A few days later he authorized Weekes to endorse and cash the draft. It was payable to Weekes and his attorney in the car damage case.
 
 
 [2]
 Jenkins v. Skelton, 1920, 21 Ariz. 663, 192 P. 249. See also Daniel v. City of Tucson, 1938, 52 Ariz. 142, 79 P.2d 516, 117 A.L.R. 1211; State v. Airesearch Mfg. Co., Inc., 1949, 68 Ariz. 342, 206 P.2d 562; Malta v. Phoenix Title & Trust Co., 1953, 76 Ariz. 116, 259 P.2d 554
 
 
 [3]
 Jenkins v. Skelton, supra, n. 2; see generally Annot. 62 A.L.R.2d 977
 
 
 [4]
 See Suttle v. Seely, 1963, 94 Ariz. 161, 382 P.2d 570; Day v. Estate of Wiswall, 1963, 93 Ariz. 400, 381 P.2d 217. These are not accident cases, but they do apply the principle. See also Annot. 62 A.L.R. 2d 988
 
 
 [5]
 Day v. Estate of Wiswall, supra, n. 4
 
 
 [6]
 Suttle v. Seely, supra, n. 4; Cochise Hotels, Inc. v. Douglas Hotel Operating Co., 1957, 83 Ariz. 40, 316 P.2d 290; DeGraff v. Smith, 1945, 62 Ariz. 261, 157 P.2d 342; Roden v. Roden, 1926, 29 Ariz. 549, 243 P. 413
 
 
 [7]
 A consent judgment is as much an adjudication on the merits as one following a trial. Suttle v. Seely, supra, n. 4, Wall v. Superior Court, 1939, 53 Ariz. 344, 89 P.2d 624
 
 
 [8]
 In form, this is correct. In substance, it is not; the dismissal in the car damage case was given in consideration of payment by the defendant to the plaintiff of the full amount prayed for in the complaint
 
 
 [9]
 Day v. Estate of Wiswall, supra, n. 4; DeGraff v. Smith, supra, n. 6; Suttle v. Seely, supra, n. 4; Cochise Hotels, Inc. v. Douglas Hotel Operating Co., supra, n. 6
 
 
 [10]
 It is asserted that Weekes had an interest in the car damage case to the extent of $100, the amount of the "deductible" under the Allstate policy. In plain English, appellants assert that Weekes bargained away a substantial cause of action for personal injuries for this dollop of pottage
 
 
 [11]
 See, as to the "subrogation case route", Annot., 62 A.L.R.2d 977, 989 ff, as to the "consent route" Restatement, Judgments, § 62
 
 
 [12]
 Levitt v. Simco Sales Service of Pa., 1957, Del.Super.Ct., 11 Terry 552, 135 A. 2d 910; Mims v. Reid, 1957, Fla., 98 So. 2d 498; Sibson v. Robert's Express, Inc., 1962, 104 N.H. 192, 182 A.2d 449; Farmers Ins. Exch. v. Arlt, 1953, N.D., 61 N. W.2d 429; Aubill v. Rowles, 1961, Ohio Com.Pl., 180 N.E.2d 643, 87 Ohio Law Abst. 353; Saber v. Supplee-Wills-Jones Milk Co., 1956, 181 Pa.Super. 167, 124 A.2d 620; Sprague v. Adams, 1926, 139 Wash. 510, 247 P. 960, 47 A.L.R. 529; cf. Kidd v. Hillman, 1936, 14 Cal.App.2d 507, 58 P.2d 662; Coniglio v. Wyoming Valley Fire Ins. Co., 1953, 337 Mich. 38, 59 N.W.2d 74; Hayward v. State Farm Mut. Ins. Co., 1942, 212 Minn. 500, 4 N.W.2d 316, 140 A.L.R. 1236; Rush v. City of Maple Heights, 1958, 167 Ohio St. 221, 147 N.E.2d 599; Shaw v. Chell, 1964, 176 Ohio St. 375, 199 N.E.2d 869
 
 
 [13]
 Rosenthal v. Scott, 1961, Fla., 150 So. 2d 433, 1963, 150 So.2d 436; Travelers Indem. Co. v. Moore, 1947, 304 Ky. 456, 201 S.W.2d 7; Underwriters at Lloyd's Ins. Co. v. Vicksburg Traction Co., 1913, 106 Miss. 244, 63 So. 455; General Exch. Ins. Corp. v. Young, 1948, 357 Mo. 1099, 212 S.W.2d 396; Teper v. Rackman, 1942, 264 App.Div. 981, 37 N.Y.S.2d 203; Underwood v. Dooley, 1929, 197 N.C. 100, 147 S.E. 686; Hoosier Gas Co. v. Davis, 1961, 172 Ohio St. 5, 173 N.E.2d 349; Vasu v. Kohlers, 1945, 145 Ohio St. 321, 61 N.E.2d 707, 166 A.L.R. 855; LeBlond Schacht Truck Co. v. Farm Bureau Mut. Automobile Ins. Co., 1929, 34 Ohio App. 478, 171 N.E. 414
 
 
 [14]
 See Malta v. Phoenix Title & Trust Co., 1953, 76 Ariz. 116, 119, 259 P.2d 554, 557; Georgia Ry. & Power Co. v. Endsley, 1928, 167 Ga. 439, 145 S.E. 851, 854; Shaw v. Chell, 176 Ohio St. 375, 199 N.E. 2d 869, 873
 
 
 [15]
 Cf. Bryan v. Southern Pac. Co., 1955, 79 Ariz. 253, 286 P.2d 761, 50 A.L.R.2d 1; see also Chappell v. Boykin, 1960, 41 Ala. App. 137, 127 So.2d 636, cert. den. 271 Ala. 697, 127 So.2d 641; Scott v. Rosenthal, 1961, Fla.App. 132 So.2d 347; Georgia Ry. & Power Co. v. Endsley, supra, n. 14; Shaw v. Chell, supra, n. 12
 
 
 [16]
 Shaw v. Chell, supra, n. 12 is such a case
 
 
 [17]
 We have been cited to no case holding that such a judgment is notres judicata. The Supreme Court of Arizona has held that a prior judgment must be given effect as res adjudicata "[n]otwithstanding the apparent willingness of the parties to relitigate questions already decided." Ocean Acc. & Guar. Corp. v. United States Fid. & Guar. Co., 1945, 63 Ariz. 352, 363, 162 P.2d 609-614.
 
 
 [18]
 Cf. Henderson v. Towle, 1922, 23 Ariz. 377, 203 P. 1085
 
 
 [19]
 Reference is to the rule as it read before the amendment that became effective on July 1, 1966
 
 
 [20]
 Arizona Rule 15(d) is the same
 
 
 [21]
 United States v. Reiten, 9 Cir., 1963, 313 F.2d 673; Schuckman v. Rubenstein, 6 Cir., 1947, 164 F.2d 952; Minnesota Mining & Mfg. Co. v. Superior Insulating Tape Co., 8 Cir., 1960, 284 F.2d 478
 
 
 [22]
 Smith v. Pinner, 1948, 68 Ariz. 115, 121, 201 P.2d 741, 745. We find no Arizona case that has facts comparable to those of this case. In three cases the consent judgment involved seems to have been based upon a settlement of the entire cause of action, not as here, upon a definitely identifable part of it. Suttle v. Seely, supra, n. 4; Wall v. Superior Court, supra, n. 7; Henderson v. Towle, supra, n. 18. In two cases, the nature of the settlement is not disclosed. Cochise Hotels, Inc. v. Douglas Hotel Operating Co., supra, n. 6; DeGraff v. Smith, supra, n. 6. In one, dismissal was by the court, after trial on the merits. Roden v. Roden, supra, n. 6
 
 
 [23]
 Even if there were an Arizona case squarely holding that such a dismissal as that in the car damage case isres judicata in a companion personal injury case, that would not determine this case. Whether a supplemental pleading should be allowed in the pending federal personal injury case is a federal procedural question. As to such questions, state law does not control. Sibbach v. Wilson & Co., Inc., 1941, 312 U.S. 1, 10, 61 S.Ct. 422, 89 L.Ed. 479; Carnegie Nat. Bank v. City of Wolf Point, 9 Cir., 1940, 110 F.2d 569; Tozer v. Charles A. Krause Milling Co., 3 Cir., 1951, 189 F.2d 242; Lawrence v. Sun Oil Co., 5 Cir., 1948, 166 F.2d 466; Hofheimer v. McIntee, 7 Cir., 1950, 179 F.2d 789.
 
 
 [24]
 See: Chatfield v. Farm Bureau Mut. Auto Ins. Co., 4 Cir., 1953, 208 F.2d 250; Wildman v. Government Employees Ins. Co., 1957, 48 Cal.2d 31, 307 P.2d 359; Continental Cas. Co. v. Phoenix Const. Co., 1956, 46 Cal.2d 423, 296 P.2d 801, 57 A.L.R.2d 914; Financial Indem. Co. v. Hertz Corp., 1964, 226 Cal.App.2d 689, 38 Cal.Rptr. 249; Farm Bureau Auto. Ins. Co. v. Martin, 1951, 97 N.H. 196, 84 A.2d 823, 29 A.L.R.2d 811; Fidelity & Cas. Co. v. Harlow, 1950, 191 Va. 64, 59 S.E.2d 872; Collins v. New York Cas. Co., 1954, 140 W.Va. 1, 82 S.E.2d 288; Laughnan v. Aetna Cas. & Surety Co., 1957, 1 Wis.2d 113, 83 N.W.2d 747
 
 
 [25]
 American Auto. Ins. Co. v. Republic Indem. Co., 1959, 52 Cal.2d 507, 341 P.2d 675; Athey v. Netherlands Ins. Co., 1962, 200 Cal.App.2d 10, 19 Cal.Rptr. 89
 
 
 [26]
 Oregon Auto Ins. Co. v. United States Fid. & Guar. Co., 9 Cir., 1952, 195 F.2d 958; American Motorists Ins. Co. v. Underwriters at Lloyd's London, 1964, 224 Cal.App.2d 81, 36 Cal.Rptr. 297; Athey v. Netherlands Ins. Co., supra, n. 25; Arditi v. Massachusetts Bonding & Ins. Co., Mo., 1958, 315 S.W.2d 736; Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 1959, 28 N.J. 554, 147 A.2d 529
 
 
 [27]
 For this proposition, California cites Employer's Liab. Assur. Corp. v. Fireman's Fund Ins. Gr., 1958, 104 U.S.App. D.C. 350, 262 F.2d 239; Farm Bureau Mut. Auto. Ins. Co. v. Preferred Acc. Ins. Co., D.C.Va., 1948, 78 F.Supp. 561; Continental Cas. Co. v. Weekes, Fla., 1954, 74 So.2d 367, 46 A.L.R.2d 1159; Olson v. Hertz Corp., 1965, 270 Minn. 223, 133 N.W.2d 519
 
 
 [28]
 See Employers' Liab. Assur. Corp. v. Fireman's Fund Ins. Gr., supra, n. 27
 
 
 MERRILL, Circuit Judge, (concurring):
 
 75
 I concur in Judge Duniway's result but disagree with his reasons for affirming the District Court with respect to the effect of the settlement of the car-damage case. He attributes to the District Court a denial of leave to assert the defense of res judicata by supplemental pleading and finds no abuse of discretion in such denial, since to permit the raising of the defense would work an injustice.
 
 
 76
 However, the injustice would in no respect have been related to matters of timeliness or procedure over which the court may properly exercise discretionary control. The result would have been as unjust had the relevant facts been brought to court's attention by the original complaint or in the answer in the personal injury action. I do not believe the District Court has discretionary power to refuse to permit facts constituting a valid legal defense to be asserted because it dislikes those facts, and thus to decide a case on less than the whole tendered truth.
 
 
 77
 If an unjust result is to follow from the assertion of this defense it is only because Arizona law requires it. Judge Duniway apparently believes that although this particular problem has not been dealt with by Arizona, that state would regard its rules of res judicata as inflexible to just accommodation. I do not agree. As Judge Duniway notes, the Arizona Supreme Court has gone out of its way to avoid applying the doctrine "so rigidly as to defeat the ends of justice." In my view it would hold that where judgment is founded not on a court resolution of disputed issues but on agreement, a different court examining those issues is not precluded by technical rules from piercing the formal shield of judgment, where justice demands, to ascertain the nature of the agreement with reference to the issues in question and the intent of the parties as to whether an estoppel by judgment upon those issues should result.
 
 
 78
 I would affirm the District Court upon its implicit finding that the parties to the car-damage suit did not intend the settlement of that suit to establish absence of liability or to bar recovery for personal injuries.
 
 DISSENTING OPINION
 
 79
 KOELSCH, Circuit Judge.
 
 
 80
 This is demonstrably a "hard" case. Judge Duniway concludes — and I believe correctly — that Arizona, having espoused the single cause of action rule, would declare the dismissal with prejudice a bar to another action on the same claim. However, by a remarkable twist of a procedural rule, he effectively suppresses a hurdle that arises by operation of law. I perceive no warrant for this innovation, even in the most liberal principles of equity.
 
 
 81
 Judge Merrill declines to follow the trail blazed by Judge Duniway but arrives at the same ultimate destination. He draws a distinction between an ordinary judgment and one based upon consent, and opines that the Arizona Supreme Court would permit the latter to be attacked collaterally. But that court, as the cases cited in footnote six of Judge Duniway's opinion make clear, has repeatedly held that a consent judgment is one on the merits and res judicata of all issues that were or might have been tendered.
 
 
 82
 I regret that I cannot concur in the result reached by my brethren, or in the application of any rule save the conventional one that bars the prosecution of this further suit on the single claim.
 
 
 83
 Weekes' recourse is not against any party to this suit; he should seek redress from "those who led him, or allowed him to proceed, down the road to disaster." I therefore dissent.