CONIGLIO *v.* WYOMING VALLEY FIRE INSURANCE
COMPANY.

1. ACTION—SPLITTING CAUSE OF ACTION.
    Splitting cause of action consists in dividing single or indivisible
       cause of action into several parts or claims and bringing sev-
       eral actions thereon.

2. SAME—PURPOSE OF RULE AGAINST SPLITTING CAUSE OF ACTION.
    The rule against splitting causes of action is strictly enforced in
       this State to prevent vexation and expense to a defendant.

3. SAME—SPLITTING CAUSE OF ACTION.
    It is a rule of justice that one shall present his whole cause of
       action in one suit.

4. INSURANCE—SUBROGATION—INSURED'S PROTECTION OF INSURER—
    ASSIGNMENT.
    Plaintiff, an insured under defendant's automobile insurance pol-
       icy, was not required to take any steps to protect the insurer,
       where although subrogation clause provided that the insurer,
       in the event of payment under the policy should "be subrogated
       to all of the insured's rights of recovery therefor * * * and
       the insured shall execute * * * instruments * * * neces-
       sary to secure such rights" and "do nothing after loss to
       prejudice such rights," no assignment of plaintiff's cause of
       action for property damage was taken at time of effecting
       settlement agreement sought to be reformed.

5. ACTION—SPLITTING CAUSE OF ACTION—WAIVER OF DEFENSE.
    The defense of a split cause of action may be waived.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 1 Am Jur, Actions § 96 *et seq.*
[4] 5 Am Jur, Automobiles § 544 *et seq.*
[4] Liability insurance: Clause requiring assured's cooperation, aid,
    and (or) assistance. 72 ALR 1446; 98 ALR 1465.
[5, 6] 1 Am Jur, Actions § 101.
[7] 45 Am Jur, Reformation of Instruments § 45 *et seq.*

6. REFORMATION OF INSTRUMENTS—SETTLEMENT UNDER INSURANCE POLICY—SPLITTING CAUSE OF ACTION—WAIVER OF DEFENSE.

Defendant automobile insurer's failure to intervene and protect its rights in action by insured against tort-feasor and failure to rely on defense of split cause of action until the statute of limitations had run against plaintiff's claim against the tort-feasor constituted a waiver of such defense against insured's chancery suit for reformation of settlement agreement which had been effected prior to commencement of plaintiff's action against the tort-feasor (CL 1948, § 609.13).

7. SAME—SETTLEMENT AGREEMENT UNDER AUTOMOBILE INSURANCE POLICY—EVIDENCE.

Evidence *held*, to justify reformation of settlement agreement under automobile insurance policy to accord with insured's understanding that salvage value of car was to be added to amount of payment to insured instead of subtracted therefrom.

Appeal from Wayne; Brennan (John V.), J. Submitted April 8, 1953. (Docket No. 31, Calendar No. 45,780.) Decided June 8, 1953.

Bill by Joseph Coniglio against Wyoming Valley Fire Insurance Company, a foreign corporation, to reform a settlement agreement. Decree for plaintiff. Defendant appeals. Affirmed.

*Cary & BeGole,* for plaintiff.

*Earl D. Ross* and *Louis Rosenzweig,* for defendant.

SHARPE, J. This is an action to reform a purported written agreement to conform to an oral agreement between the parties. The following are established facts: On July 23, 1948, plaintiff Joseph Coniglio, purchased an automobile from an auto dealer in Detroit, Michigan, for the sum of $2,195. He also agreed to pay additional charges for insurance, financing and sales tax. He made a down payment of $840.35. On October 17, 1948, plaintiff was involved in an automobile accident which resulted in

serious personal injuries to himself as well as wrecking his automobile. As result of this accident, plaintiff was confined to a hospital for 5 1/2 weeks and to his home for approximately another 9 months. Plaintiff did not attempt to transact any business until the latter part of March or April, 1949, at which time he attempted to reach an agreement with an adjuster for the Wyoming Valley Fire Insurance Company for damages to his car. At this time plaintiff signed an agreement which is the subject of this suit. On June 21, 1949, plaintiff started an action against Joseph Coppola in the circuit court of Wayne county for damages sustained by him for personal injuries. No claim was made for damages to plaintiff's car. Plaintiff recovered a judgment in that action on January 16, 1952, in the amount of $17,000. This judgment was settled on February 1, 1952, for the sum of $13,722.47, at which time plaintiff signed a release covering property damages as well as damages for personal injuries.

In plaintiff's bill of complaint it is alleged:

"That this bill of complaint is filed for the purpose of cancelling and rescinding a claimed settlement under a policy of insurance issued by the defendant Wyoming Valley Fire Insurance Company, and plaintiff states that said settlement was obtained under fraudulent representations and circumstances, mistake and undue influence.

"That plaintiff purchased a 1947 model Chevrolet 2-door automobile, motor number EAA652464, from the defendants Jerry Lynch, Grover Lynch and Elizabeth Lynch, co-partners d/b/a Jerry Lynch, on July 26, 1948, for $2,520.35, further that said defendants Jerry Lynch, Grover Lynch and Elizabeth Lynch, co-partners d/b/a Jerry Lynch, and/or the defendant Associates Discount Corporation, an Indiana Corporation, arranged for an insurance policy with the defendant Wyoming Valley Fire In-

surance Company principally to protect a note for $2,109.60 given to Jerry Lynch to cover 24 monthly instalment payments on said automobile, and said insurance policy was written by the defendant Wyoming Valley Fire Insurance Company providing to pay for collision damage above a $100 deductible amount for a period of 2 years.   *   *   *

"That said policy of insurance was in full force and effect on October 17, 1948, when said Chevrolet automobile was seriously damaged in a collision accident, and plaintiff herein received injuries in said accident including a severe fracture and dislocation of his hip and a severe concussion and permanent injury to his brain from which plaintiff continues to suffer up to the time of filing this bill of complaint.

"That during plaintiff's confinement as a result of his injuries in said accident, said automobile was repossessed by the defendant Associates Discount Corporation and sold in accordance with a notice of sale on December 14, 1948, with full knowledge on the part of the defendant Wyoming Valley Fire Insurance Company.

"That prior to May 5, 1949, defendant Wyoming Valley Fire Insurance Company, through its agents and representatives, arranged a proposed settlement with this plaintiff while he was still suffering from the injuries sustained in said accident and particularly from the brain injury sustained therein, claiming the salvage value of said automobile amounted to $600, and offered to make a settlement for $1,395 subject to the $100 deductible feature provided in said policy, and plaintiff mistakenly assumed the salvage value of $600 was to be added to the proposed settlement, making a total settlement of $1,995 less the $100 deductible amount stated in the policy.

"That relying on said representations, plaintiff signed certain settlement papers in blank for the agent of the Wyoming Valley Fire Insurance Company and was tendered a check from said defendant dated May 5, 1949, payable to plaintiff herein and the

Associates Discount Corporation for $695, indicating said papers had been filled in after plaintiff's signature was obtained in a manner so as to deduct rather than add to the settlement said claimed salvage value of said automobile amounting to $600 according to the representative of the Wyoming Valley Fire Insurance Company. * * *

"That said automobile was duly sold for $300 and plaintiff received a letter from the defendant Associates Discount Corporation, dated May 24, 1949, copy of which is attached hereto marked Exhibit 4, claiming a deficiency owing to the Associates Discount Corporation of $1,563.95, for which plaintiff herein has been sued under the note given to Jerry Lynch in the common pleas court for the city of Detroit, being case No 507,253 filed therein and pending for trial; further, plaintiff states that he is informed the defendant Wyoming Valley Fire Insurance Company had full knowledge of the proposed sale of said automobile and permitted the said vehicle to be sold for $300, although said defendant claimed said vehicle had a salvage value of $600."

In his bill of complaint plaintiff asked for the following relief:

"That said settlement be reformed in a manner to conform with the plaintiff's understanding of said settlement in the amount of $1,995, less the $100 deductible provision in the policy and the net amount of the sale of the salvage claimed to amount of $275.50, and that the defendant Wyoming Valley Fire Insurance Company be ordered by the decree of this court to pay $1,623.50, the net balance, to plaintiff herein subject to the amount due by the plaintiff to the defendant Associates Discount Corporation and claimed to be the sum of $1,563.95 in said suit filed in the common pleas court for the city of Detroit.

"That the defendant Associates Discount Corporation be enjoined from prosecuting or proceeding with

said action in the common pleas court for the city of Detroit, pending the final decree in this cause."

Defendant filed an answer to plaintiff's bill of complaint in which it:

"Admits that, prior, to May 5, 1949, through its agents, it effected a settlement with the plaintiff for the loss of his automobile as a result of the collision sustained by him, but denies that it was during the time that he was still suffering from injuries and, particularly, from the brain injury sustained by the plaintiff. Defendant admits that it offered to make a settlement of $1,395 which was the actual cash value of the car at the time of the loss, less $100 deductible as provided for by the policy; denies that plaintiff, mistakenly, assumed that the salvage value of $600 was to be added to the $1,395. Further answering said paragraph, this defendant shows that, at the time of effecting its settlement under the policy with the plaintiff, the plaintiff was in full possession of all his faculties, fully understood the terms of the settlement. That it was represented to the plaintiff that the said automobile was of the value of $1,395 and that this defendant, at that time, had an offer of $600 for the salvage, that the plaintiff could either take the full sum of $1,395 less the $100 deductible, in which event, this defendant would have the salvage rights to the said automobile; or the plaintiff could take the salvage rights himself, in which event, the amount of $600 would be deducted from the amount of settlement; that this proposition was fully understood by the plaintiff at the time of the negotiations for settlement. That the plaintiff, then, agreed to accept the automobile and obtain the salvage himself and to have the sum of $600 deducted from the settlement amount. In accordance with the said agreement and in accordance with the policy, this defendant, then, issued its check in the amount of $695 payable to the plaintiff and the Associates Discount Corporation. That said sum of $695, being the difference between the value of the automobile of

$1,395 less the $100 deductible less the $600 salvage value. That upon such agreement the plaintiff executed the proof of loss in accordance with the policy. * * *

"This defendant denies that the plaintiff signed the settlement papers in blank, admits that a check was issued, dated May 5, 1948 [1949?], payable to the plaintiff and Associates Discount Corporation, in accordance with the terms of the policy of insurance in the amount of $695, denies that the said transaction indicated that the blanks had been filled in after the plaintiff's signature had been obtained so as to deduct rather than add the salvage value of the automobile. Further answering said paragraph, this defendant says that the check so tendered to the plaintiff was in accordance with the settlement with the plaintiff and without any fraud or misrepresentations on the part of the defendant or its agent and in accordance with the agreement fully understood by the plaintiff."

On April 1, 1952, defendant filed an amendment to its answer which contained the following:

"Further answering said bill of complaint, this defendant shows that the plaintiff commenced suit against Joseph Coppola, et al, in the circuit court for Wayne county by cause No 257046 for the damages sustained by him as a result of an accident set forth in the plaintiff's bill of complaint, that in said cause of action, the plaintiff obtained a judgment in the amount of $17,000 on January 16, 1952, and that the plaintiff settled said judgment for the sum of $13,-722.47 as this defendant is informed and believes to be the truth.

"That the said action by the plaintiff against the said Joseph Coppola, et al, includes or should have included the loss of the plaintiff's automobile, and further, that if the plaintiff did not include the loss of said automobile in his action above set forth, he thereby split his cause of action and has prevented this defendant from maintaining any cause of action

against the parties responsible for the loss of said automobile by reason thereof.

"Further answering, this defendant says that under the terms and conditions of the policy issued by this defendant to the plaintiff, this defendant is entitled to be subrogated to any cause of action against the third parties responsible for said loss and that the plaintiff's action in recovering the amount of said loss or in failing to include the said loss to his automobile, he has deprived this defendant of its subrogation rights under the terms of the policy.

"Further answering said bill of complaint, this defendant says that the action and conduct of the plaintiff as above set forth inequitably and unjustly deprived this defendant of the valuable right of subrogation to the great loss and damage of this defendant, and that by reason of the plaintiff's breach of his contract, this defendant is not liable to the plaintiff."

The cause came on for trial and at its conclusion the court entered a decree in favor of plaintiff in an amount of $1,295 and interest in the amount of $194.25.

Defendant appeals and urges that plaintiff, having commenced an action for his personal injuries arising out of the accident, and having failed in that action to include damages to his automobile, has split his cause of action and thereby deprived defendant of its valuable right of subrogation in the event it paid or was called upon to pay upon its insurance policy. We have had occasion to pass upon the issue raised by defendant. In *Tuttle* v. *Everhot Heater Co.*, 264 Mich 60, 64, we said:

"Splitting a cause of action consists in dividing a single or indivisible cause of action into several parts or claims and bringing several actions thereon."

In *Szostak* v. *Chevrolet Motor Co.*, 279 Mich 603, 607, we said:

"In this State the rule against splitting of causes of action is strictly enforced to prevent vexation and expense to a defendant. *Brewster Loud Lumber Co.* v. *General Builders' Supply Co.*, 233 Mich 633; *Corey* v. *Jaroch*, 229 Mich 313; *Continental Ins. Co.* v. *H. M. Loud & Sons Lumber Co.*, 93 Mich 139 (32 Am St Rep 494). It is a rule of justice that one shall present his whole cause of action in one suit. *Dutton* v. *Shaw*, 35 Mich 431. In some other jurisdictions a different rule prevails. *Tuttle* v. *Everhot Heater Co.*, 264 Mich 60, where the law of New York, permitting separate actions for injuries to persons and property from a single tort, was applied as foreign law but was expressly declared to be contrary to the law of this State."

The policy of insurance issued by defendant insurance company contains the following subrogation clause:

"In the event of any payment under this policy, the company shall be subrogated to all of the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

Under the facts in the case at bar the defendant insurance company would be barred from maintaining any action against the tort-feasor. Plaintiff urges that the defendant insurance company by reason of its conduct is estopped to complain of plaintiff splitting his cause of action. The record shows that defendant insurance company failed to take the assignment contemplated in the subrogation clause as its insurance adjuster did not think its right of subrogation was worth protecting, nor did it attempt

to join or protect its rights in plaintiff's suit for damages against the tort-feasor. We note that plaintiff's action for damages against the tort-feasor was filed June 21, 1949, and judgment in that action was entered January 16, 1952, but defendant insurance company did not raise the issue of splitting a cause of action until April 1, 1952, when it filed an amendment to its answer. While plaintiff's action against the tort-feasor was pending, defendant insurance company could have protected its interest by intervening in that action.

Plaintiff was not required to take any steps to protect its insurer. See *Washtenaw Mutual Fire Insurance Company* v. *Budd,* 208 Mich 483. The defense of a split cause of action may be waived. See *Wolverine Insurance Company* v. *Klomparens,* 273 Mich 493.

In our opinion defendant insurance company by failing to intervene and protect its rights in the action between plaintiff and the tort-feasor, and by failing to rely on the defense of a split cause of action until the statute of limitations[*] had run against plaintiff's claim against the tort-feasor, constitutes a waiver of its defense against plaintiff's chancery action for a reformation of the agreement. The record shows that plaintiff's injury occurred October 17, 1948, and that he was confined to the hospital for 5-1/2 weeks, and to his home for approximately 9 months, and did not attempt to transact any business until the latter part of March or April, 1949, at which time the agreement in question was entered into with an adjuster of defendant insurance company. Plaintiff claims that the agreement was as follows:

"*A.* He came in. He told me he represented the insurance company; that he was there to adjust for

---

[*] See CL 1948, § 609.13 (Stat Ann 1949 Cum Supp § 27.605).— Reporter.

the automobile that was in the accident. He told me that the value of the car at that time was $1,395, and he had had the offer of $600 for salvage of the automobile. In my mind I figured out $1,395 and $600, making a total of almost $2,000, which would take care of my finance company for the automobile.

"*Q.* That left you a small balance above that?

"*A.* Yes.

"*Q.* Do you know exactly how much?

"*A.* 20. I think it was two thousand, five, I believe, something like that. I don't remember.

"I was satisfied to make a settlement inasmuch as I hadn't paid anything more on the car and lose what I put in it. I signed some papers for him. I signed a blank slip. He said he would fill out when he got back to the office. He didn't want to bother me any more since I was in bed. He said just for me to sign blank and he would fill out the blank when he got to the office. He told me the papers were for settlement for the automobile. I didn't read them. I don't know what these settlement papers were, but I did sign them in blank with the understanding that I was being allowed $1,995 for my car."

The insurance adjuster testified that the agreement was that plaintiff was to receive the sum of $695 in cash and the salvage value of the car which was estimated at $600. The record shows that prior to the time that there was any discussion about an agreement the car had been repossessed and sold for $300, and that the sale value of the car in October, 1948, was from $2,075 to $2,195. The trial court made the following finding of facts:

"The nub of this issue is whether or not the alleged contract of settlement between the plaintiff and the Wyoming Valley Fire Insurance Company is a valid contract. The court finds that it was not. The contract, so-called, of settlement, was an unconscionable contract, savoring of fraud if not directly based upon fraud. There is no meeting of the minds between

plaintiff and the Wyoming Valley Fire Insurance Company relative to the settlement of that claim. So, the court will set aside the so-called alleged claim of settlement between the plaintiff and the Wyoming Valley Fire Insurance Company." and entered a decree which contains the following:

"That the fair market value of plaintiff's automobile at the time of loss is found to be $1,995, and defendant Wyoming Valley Fire Insurance Company is credited with the deductible provision of said policy in the amount of $100 and in the amount of $600 that could have been obtained for the salvage of said automobile by the plaintiff or the defendant Associates Discount Corporation, an Indiana corporation;

"That plaintiff recover damages in the amount of $1,295 and interest thereon in the amount of $194.25 against the defendant Wyoming Valley Fire Insurance Company, a foreign corporation, and it is ordered, adjudged and decreed that a money judgment in the amount of $1,489.25, with plaintiff's costs to be taxed, be and the same hereby is entered against the defendant Wyoming Valley Fire Insurance Company, a foreign corporation, and that plaintiff have execution therefor."

This is a chancery case and in our opinion the record does not disclose any reason for a reversal of the decree which is affirmed, with costs to plaintiff.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.