PEOPLE v. NOTH

Opinion of the Court

1. Criminal Law—Double Jeopardy—Constitutional Law.

  The Fifth Amendment protection against double jeopardy is
    enforceable against the states through the Fourteenth Amend-
    ment (US Const, Ams 5, 14).

2. Criminal Law—Double Jeopardy—Collateral Estoppel—Ret-
    roactivity.

  Collateral estoppel is an ingredient of the Fifth Amendment
    guarantee against double jeopardy and is enforceable against
    the states; the decision of the United States Supreme Court
    so holding applies retroactively (US Const, Am 5).

3. Estoppel—Collateral Estoppel—Definition.

  "Collateral estoppel" means that when an issue of ultimate fact
    has once been determined by a valid and final judgment, that
    issue cannot again be litigated between the same parties in any
    future law suit.

4. Criminal Law—Double Jeopardy—Collateral Estoppel—Con-
    stitutional Law.

  The Fifth Amendment jeopardy clause, which includes the doc-
    trine of collateral estoppel, does not guarantee that a person
    may not be prosecuted for two separate offenses occurring at
    two separate times and against two separate persons, even
    though the two offenses are closely allied in point of time.

References for Points in Headnotes

[1] 16 Am Jur 2d, Constitutional Law § 234.
  21 Am Jur 2d, Criminal Law § 166.
[2] 16 Am Jur 2d, Constitutional Law § 234.
  20 Am Jur 2d, Courts § 226.
  21 Am Jur 2d, Criminal Law § 166.
[3–5, 7, 9–12] 21 Am Jur 2d, Criminal Law § 165 et seq.
[6] 21 Am Jur 2d, Criminal Law § 182 et seq.
[8] 21 Am Jur 2d, Criminal Law § 165.

5. RAPE — FELONY-MURDER — DOUBLE JEOPARDY — COLLATERAL
ESTOPPEL.

Defendant's prosecution for rape was not barred by the Fifth
Amendment jeopardy clause even though the defendant had
previously been tried for a murder committed during the rape
or the attempt to rape, the murder victim was the husband of
the complainant in the rape trial, and the defendant was con-
victed of manslaughter, not first-degree murder, where in the
rape trial the defendant testified that after he shot the com-
plainant's husband, he started to leave, but that five or ten
minutes later he returned to the complainant's car and raped
her, because after the killing, that incident was over and the
rape was a separate offense, albeit in proximity in time and
place to the killing.

### DISSENT BY LEVIN, J.

6. CRIMINAL LAW—DOUBLE JEOPARDY—"SEPARATE OFFENSES".

*Technical distinctions as to what constitutes a "separate offense"*
*and a "separate time" deprive the constitutional guarantee*
*against double jeopardy of any meaningful significance (US*
*Const, Am 5).*

7. CRIMINAL LAW—DOUBLE JEOPARDY—APPLICABILITY—TEST.

*Whether the constitutional guarantee against double jeopardy*
*applies depends on whether the matter sought to be litigated*
*has been tried before.*

8. CRIMINAL LAW—DOUBLE JEOPARDY—PRINCIPLE.

*The essence of the constitutional guarantee against double jeo-*
*pardy is that the accused person should be required to run*
*the gauntlet but once, that he may be exposed but once to the*
*risk or hazard of conviction (US Const, Am 5).*

9. RAPE—FELONY-MURDER—DOUBLE JEOPARDY—APPLICABILITY.

*The double jeopardy clause bars a prosecution for rape where*
*the defendant had been tried for murdering the rape victim's*
*husband while in the perpetration of the rape or an attempt*
*to rape, the defendant having first shot the husband, then*
*raped or attempted to rape the wife, the people's case had*
*been clearly based on a felony-murder theory, the trial judge*
*had instructed the jury that if the defendant had killed the*
*husband during a rape or an attempt to rape, he could be con-*
*victed of first-degree murder, and the defendant was convicted*
*of manslaughter, not first-degree murder; although the jury*
*might have acquitted the defendant of felony-murder because*

*it found that the defendant had not decided to rape the wife until after the killing, the defendant cannot be penalized for the people's decision not to add a separate count of rape (US Const, Am 5; MCLA §§ 750.316, 750.520).*

10. Criminal Law—Double Jeopardy—Applicability—Test.
   *The real issue in deciding whether the constitutional guarantee against double jeopardy applied is not what the first jury decided, but whether an accused was twice put in jeopardy; the accused's being placed in jeopardy does not depend on the form of the charge or on what the jury found, but on the substance of the matter (US Const, Am 5).*

11. Criminal Law—Double Jeopardy—Erroneous Acquittal.
   *The double jeopardy guarantee provides that even if a man is erroneously acquitted he cannot be tried again for the same offense (US Const, Am 5).*

12. Rape — Felony-Murder — "Same Transaction" — Double Jeopardy.
   *A rape, committed a few minutes after the defendant had killed the rape victim's husband, and the killing of the husband were the product of a single criminal act and were two aspects of the same transaction; the constitutional guarantee against double jeopardy prevents trying the defendant for the rape after he has been acquitted of first-degree murder for the killing of the husband where the people's case in the murder trial had been based on a felony-murder theory and the trial judge, in the murder case, had instructed the jury that if the defendant had killed while raping the wife or attempting to rape the wife, the defendant could be convicted of first-degree murder (US Const, Am 5; MCLA §§ 750.316, 750.520).*

Appeal from Macomb, James Spier, J.  Submitted Division 2 August 18, 1970, at Detroit.  (Docket No. 7675.)  Decided April 26, 1971.  Leave to appeal granted August 12, 1971.  385 Mich 779.

Walter Noth was convicted of rape.  Defendant appeals by leave granted.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,*

Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Attorney, and *Don L. Milbourn,* Assistant Prosecuting Attorney, for the people.

*Richard E. Cyrul,* for defendant on appeal.

Before: LESINSKI, C. J., and LEVIN and O'HARA,* JJ.

O'HARA, J. This is an appeal on leave granted from a jury conviction of rape[1] rendered on December 12, 1950. Prior thereto, on October 11, 1950, the defendant was convicted of manslaughter under an information charging first-degree murder.[2] In the murder trial, the prosecution did not rely alone on the historic elements of premeditation and malice. Rather, the people argued that defendant was guilty under the statute making any killing which occurs in the commission of or the attempt to commit the crime of rape, first-degree murder. It is undisputed that the trial judge specifically instructed the jury on this precise point. We quote:

*"The Court:* Attention has been called [by defense counsel] to the fact that the court mentioned the theories and claims of the defendant and did not state the claim or theory of the prosecution, and in fairness I should state as has been stated by them, it is their claim that this killing was a murder that was committed in the perpetration, or attempted perpetration of rape, and therefore, it is under the statute murder of the first degree. That is the claim of the prosecution. You may now retire in charge of the officer."

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23, as amended in 1968.

[1] MCLA § 750.520 (Stat Ann Rev 1954 § 28.788).

[2] MCLA § 750.316 (Stat Ann Rev 1954 § 28.548).

The obvious question is whether the defendant was twice put in jeopardy for the same offense, rendering his second conviction repugnant to the Fifth Amendment to the Constitution of the United States.

The law is clear. The Fifth Amendment protection against double jeopardy is enforceable against the states through the Fourteenth Amendment. *Benton* v. *Maryland* (1969), 395 US 784 (89 S Ct 2056, 23 L Ed 2d 707). *Benton, supra,* is retroactive. *North Carolina* v. *Pearce* (1969), 395 US 711 (89 S Ct 2072, 23 L Ed 2d 656).

Thus, if defendant's conviction for rape (and consequent life sentence) is constitutionally infirm, he is entitled to his freedom *instanter* for he has completed his 10- to 15-year sentence under the prior conviction for manslaughter.

The question becomes whether he was in fact twice put in jeopardy for the same offense under the law of *Ashe* v. *Swenson* (1970), 397 US 436 (90 S Ct 1189, 25 L Ed 2d 469). This decision controls the instant case. Prior to *Ashe,* the controlling law was *Hoag* v. *New Jersey* (1958), 356 US 464 (78 S Ct 829, 2 L Ed 2d 913) *reh den* 357 US 933 (78 S Ct 1366, 2 L Ed 2d 1375). In *Hoag,* the Supreme Court adopted and applied the Fourteenth Amendment test of due process alone, that of "fundamental unfairness." The court did not decide whether the doctrine of "collateral estoppel" is an "ingredient of the Fifth Amendment guarantee against double jeopardy." In *Ashe* the court incorporated the doctrine into the Fifth Amendment, enforceable against the states, and retroactively applicable. We quote Mr. Justice Stewart who wrote the opinion of the Court in *Ashe.*

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in

our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit."

Thus, our task is to determine judicially whether in this case of Noth the issue of ultimate fact, *i.e.*, whether Noth's conviction of manslaughter was a determination by a valid and final judgment that he was not guilty of rape or attempted rape. If it did, his second trial for rape offended against the Fifth Amendment guarantee against double jeopardy.

On June 11, 1950, defendant embarked upon a social program, the chief constituent of which was drinking beer. The activities began between 12:30 and 1 of that Saturday afternoon. According to defendant's testimony, between a picnic, a visit to a tavern, a side trip to his home, and a fresh start about 1:30 a.m., he drank "about 15 bottles of beer". Along about this time, he testified with complete candor that "he wanted a woman". He knew of a place called Bill's Woods (also known to him as Gus's Woods) where those amorously inclined were known to gather and park. He indicated in the second (rape) trial that there were "guys who were pimping out there" and one could obtain gratification for a modest stipend. To this end, he stopped at his home to get some money. He also, at some undetermined time, armed himself with a pistol which he was carrying in his belt under his shirt.

Upon arriving at the wooded area, he pulled up alongside a parked car. He got out of his truck and walked over to the car and saw a woman in the front seat. At this point the testimony is in conflict. According to the prosecutrix, he opened the door and announced, "I want a piece of ass and I don't care who knows it". According to the defendant,

he asked her if she was alone. He does not remember whether or not she answered. At this moment, the defendant's version is that a man raised himself up from the back seat. The defendant testified that he told him, "I only wanted a woman and everything was going to be all right". The man started to get out of the car, the woman having already stepped out. "I got scared and told him to stay in the car." The man continued to get out of the car and "he got hold of me and I rasseled loose and then I heard— I faintly remember— * * * two shots" from defendant's gun. We now quote directly:

"*Q*. What did you do after the episode you just mentioned?
"*A*. Beg pardon.
"*Q*. What did you do after the rassle or scuffle ended?
"*A*. Well, I got back in the truck and tried to start it—
"*Q*. Did it start?
"*A*. No, sir, it didn't start—
"*Q*. What did you do?
"*A*. I started to take the car and flee.
"*Q*. The other car that was sitting there?
"*A*. Yes.
"*Q*. Did you take it?
"*A*. Yes, I did take it.
"*Q*. Anything happen between the time that you started (?) the truck and couldn't start it and the time you drove away in the other car?
"*A*. Yes, I seduced the woman."

Defendant claims that the intercourse was attended by little resistance, if any; that while in the act of intercourse he asked the woman if she wanted to go with him and that she said "yes"; that she got in the car with him voluntarily and that later she was "blabbering"; and that he pushed her out of

the car and continued on to Cincinnati where he was later arrested.

The prosecutrix's facts are somewhat less complicated. In simple substance she claimed that after the defendant's introductory remark her husband got out of the car, that defendant shot him, pushed her to the ground, forcibly raped her, and then hit her over the head with the pistol.

On these facts, or whichever factual version or combination thereof it chose to believe, the jury found the defendant guilty of manslaughter.

The information filed reads as follows:

"Walter Noth feloniously, wilfully and of his malice aforethought did kill and murder one Eugene Schaaf contrary to Section 28.548, Michigan Statutes Annotated."

It is at least of interest to note that the jury, before arriving at its verdict, three times requested further instructions concerning the difference between the degrees of murder and asked specifically for instruction upon the elements of manslaughter. The foreman asked if they could bring in a verdict with a recommendation. The trial judge disallowed the request, but permitted the jurors to express themselves individually.[3]   Three jurors recommended the maximum penalty.

In response to the jury's request as to the difference between murder and manslaughter, the trial judge replied:

"The one element that must be there to distinguish it [murder] from manslaughter [is] the motive."

Soon thereafter the verdict of guilty of manslaughter was returned and the sentence was imposed as noted.

---

[3] No error is assigned because of this and we do not consider it decisionally.

Then came defendant's arrest, arraignment, and trial on the following charge:

"That * * * on or about the 12th day of June, * * * one Walter Noth, with force and arms, in and upon Beulah Schaaf, a female of the age of 16 years or more, to wit, of 31 years, did make an assault on her, the said Beulah Schaaf, then and there by force and against her will did ravish and carnally know contrary to Section 529, Act 328, Public Acts of 1931, 28.788 Michigan Statutes Annotated."

At this trial the testimony of the prosecutrix was virtually identical to that which she gave in the murder case. Defendant, however, expanded upon and to some extent modified his testimony at the murder trial. The significant modification or expansion is in the following account of what transpired immediately after he fatally shot Mrs. Schaaf's husband.[4] As Mr. Schaaf was getting out of the car defendant said:

" * * * I told him there was no use getting mad—I was leaving. All I wanted was a woman— I was leaving."

Then came the reaffirmation and expansion of the testimony which we think furnishes the crucial fact situation. After defendant had testified that he had declared his intention to leave, the following testimony was adduced.

"*Q.* What did he (Mr. Schaaf) do?
"*A.* He got out of the car, and I was scared and I started to run and started to get into the truck.
"*Q.* What happened then?

---

[4] Defendant maintained throughout, and credibly so, that he did not know the couple was married until his arrest in Cincinnati after he fled.

"*A.* I changed my mind about getting into the truck for some reason or other and started to run and he grabbed me and we had a slight scuffle and I shot him."

\*        \*        \*

"*Q.* What did you do then?
"*A.* I kind of realized the plight I was in and started to flee and was going to take the car and I got out and seen the woman and I remembered I came out looking for a woman and I went over and was going—for the purpose of having intercourse with her."

\*        \*        \*

"*Q.* To the best of your recollection how long would you say it was from the time the man got out of the car until you returned from your truck to where she was?
"*A. That is hard to say, but I would guess around five, ten minutes, around five minutes.*"

\*        \*        \*

"*Q.* What happened then?
"*A.* Well, I took hold of her, embraced her and she was reluctant, and seems like we ended up on the ground."

\*        \*        \*

"*Q.* Did you have intercourse with her?
"*A.* I believe so, yes."

The testimony conflicts as to how Mrs. Schaaf got into or was forced into the car but in any event defendant decided to get rid of her and he testified:

" \*   \*   \*   she wasn't getting out fast enough so I grabbed her and was pushing her out and the door was still closed and she wasn't getting out so I hit her with the pistol.
"*Q.* I want to go back a moment to the pistol. Did you have the pistol, the gun, with you, on your person, in other words, in your pocket or any place during all this time—

"*A.* No, sir, when I got back in the truck, well, I imagine I had the gun in my right hand—I am righthanded—so when I start the truck I always place it in neutral and I would need both hands and so I laid the pistol down there and then during the alleged attack *the pistol was in the truck and then I got it when we started to leave.*" (Emphasis supplied.)

To the testimony of the murder trial we apply the test ordained by *Ashe* by asking what ultimate fact or facts were determined by its valid and final judgment. We find and hold the following ultimate facts were determined by the verdict of manslaughter:

1) Walter Noth shot and killed Ernest Schaaf.
2) Walter Noth did not shoot and kill Ernest Schaaf in the perpetration of, or the attempt to perpetrate, the felony of rape.
3) Walter Noth shot and killed Ernest Schaaf within the meaning of the court-charged and legal definition of manslaughter.

Thus, because *that* jury decided that defendant appellant did not kill Schaaf in the perpetration of the felony of rape or the attempt to commit rape, is the state not clearly barred from prosecuting him again for the crime of rape, which rape admittedly took place within five to ten minutes of the killing?
It was not.
Collateral estoppel, as an ingredient of the Fifth Amendment double jeopardy clause, clearly guarantees that no person shall be "subject *for the same offense* to be twice put in jeopardy * * * ".

To us, just as clearly, the Fifth Amendment jeopardy clause, as now interpreted by the ultimate constitutional authority as including the doctrine of collateral estoppel, does not guarantee that a person may not be prosecuted for two separate offenses

occurring at two separate times and against two separate persons even though closely allied in point of time.

We read the records in both cases, as we must, to establish clearly that defendant committed the offense of manslaughter upon Walter Schaaf and did not kill him in an attempt to perpetrate rape. After he killed Schaaf, that incident was over. Noth fired in panic, or for whatever other reason, within the definition of manslaughter. He left the scene of that crime in an attempt to flee. Failing to start his own truck, he left the death-dealing weapon in it and went back to the scene of a previous crime to get a car that was operational to effect his escape. At this point, or very nearly this point, he remembered "he wanted a woman" and he had forcible intercourse with a woman. This was rape. It was unrelated in intent, or in issue of ultimate fact, to the previous homicide. In logic and in law, it matters not that the interval between the two offenses was five or ten minutes, five or ten days, or five or ten weeks. The Fifth Amendment is not, in our view, a *carte blanche* to commit a separate offense in immediate proximity in point of time and place to another separate offense. Defendant cannot escape prosecution for the later separate offense.

The second prosecution was not barred by the Fifth Amendment before or after *Ashe, supra.* *Ashe* is inapposite.

We have discussed the only meritorious issue upon the appeal by leave granted. The judgment of conviction of rape is affirmed.

LESINSKI, C. J., concurred.

LEVIN, J. (*dissenting*). I dissent because no litigant, including the people, should be permitted to

split his cause of action and because, on the facts of this case, the jury's verdict at the conclusion of the first trial finding, and I quote from the majority opinion, that "Walter Noth did not shoot and kill Ernest Schaaf in the perpetration of, or the attempt to perpetrate the felony of rape" bars the people from proving at the second trial that Noth did rape Mrs. Schaaf.

There was but one criminal episode. The evidence introduced at Noth's second trial was essentially the same as that introduced at the first. Both at the first and at the second trials the people's evidence tended to prove that Noth raped Mrs. Schaaf and about five minutes earlier had killed her husband.

The jury at the first trial ameliorated Noth's guilt by acquitting him of the charged offense, first-degree murder, and finding him guilty of manslaughter. He was sentenced to serve a prison term of 14–1/2 to 15 years, the maximum sentence for that offense under the statute. Dissatisfied with that result, the people brought Noth to trial a second time, this time for rape. The second jury took a less sympathetic view and Noth was convicted of rape and sentenced to life in prison.

Walter Noth, although convicted of manslaughter at his first trial, successfully defended himself against a possible life sentence at that trial. The people are no more entitled to a second chance before a second jury than any other litigant and, whatever formula of words and legal niceties are chosen to justify affording the people a second opportunity to obtain conviction for an offense punishable by a life sentence, that is in essence what was done here.

In *Ashe* v. *Swenson* (1970), 397 US 436 (90 S Ct 1189, 25 L Ed 2d 469), a number of men, engaged in a poker game, were robbed by masked gunmen.

The United States Supreme Court held that the doctrine of collateral estoppel was an aspect of the Fifth Amendment guarantee against double jeopardy and that, since Ashe had been acquitted at the first trial of being one of the gunmen who had robbed one of the men at the poker game, he could not be tried on a charge of robbing another of the men at the game. Manifestly, the issue that had been tried at the first trial was whether Ashe was one of the gunmen. Accordingly, the State could not properly retry that question simply because technically the robbery of each man at the poker table was a separate offense.

My colleagues write: "Collateral estoppel, as an ingredient of the Fifth Amendment double jeopardy clause, clearly guarantees that no person shall be 'subject *for the same offense* to be twice put in jeopardy'". (Emphasis by the Court.)

The language quoted above is, indeed, taken verbatim from the Fifth Amendment itself, but it is clearly an oversimplification to reason, in opposition to *Ashe* v. *Swenson, supra,* that the Double Jeopardy Clause "does not guarantee that a person may not be prosecuted for two separate offenses occurring at two separate times and involving two separate persons even though closely aligned in point of time".

Technical distinctions as to what constitutes a "separate offense" and "a separate time" deprive the constitutional guarantee of any meaningful significance.

No doubt, some interval of time intervened between the extraction of the money from each of the separate victims in *Ashe* v. *Swenson.* Although, theoretically, there were five separate offenses (one for each victim) and the transaction was also divisible into separate time sequences, the doctrine of

collateral estoppel was held to preclude a second trial.

In my opinion, the proper inquiry is whether the matter sought to be litigated has been tried before. The first case against Walter Noth was tried on the people's theory that Mr. Schaaf was killed in the perpetration of a rape or attempted rape upon his wife. The people asked the jury to look at what occurred as one continuum of events and to find that the murder and the rape were tied together. Having pressed that position and failed, the people should not be permitted to try the matter again under a different label.

Noth was required to defend himself at the first trial against the people's claim that he had raped Mrs. Schaaf. The judge charged the first jury that if it found that Noth killed Mrs. Schaaf's husband while attempting to rape her it could convict him of first-degree murder. The question of rape or attempted rape was tried at the first trial. The essence of the constitutional guarantee embodied in the Double Jeopardy Clause is that the accused person should not be required to run the gauntlet but once, he may not be exposed but once to the "risk or hazard of conviction".[1]

I recognize that the first jury might have acquitted Walter Noth of felony murder because it found that when he killed Ernest Schaaf he was not attempting to rape Schaaf's wife. That, although Noth entered the woods looking for a woman, he did not decide

---

[1] In *Price* v. *Georgia* (1970), 398 US 323 (90 S Ct 1757, 26 L Ed 2d 300), the United States Supreme Court declared (p 331) "The Double Jeopardy Clause, as we have noted, is cast in terms of the risk or hazard of conviction, not of the ultimate legal consequences of the verdict." Earlier in the opinion the Court said that (p 329) the Constitution emphasizes "risk of conviction" and that "the Double Jeopardy Clause of the Fifth Amendment is written in terms of potential or risk of conviction, not punishment."

to rape Mrs. Schaaf until after he had killed her
husband. If the first jury so found, it might have
both acquitted Noth of felony murder and convicted
him of rape, had a count charging rape been before
it. It was not, however, Noth's doing that the first
jury did not have the opportunity to convict him
of rape. The people have only themselves to blame
for their failure to charge him with both murder and
rape in separate counts and try him for both offenses
at the same time.[2] Having chosen to try Noth for
murder alone, the people should not be heard now
to say that the first jury might have convicted him
of rape if the people had added a count for rape.

Moreover, the real issue is not what the first jury
decided; the real issue is whether Noth was twice
put in jeopardy. Whether he was previously put
in jeopardy should not depend on the form of the
charge or on what the jury found, but the substance

---

[2] "The rule in regard to the joinder of counts in an information
or indictment is, that, if different counts are based on the same
transaction, so that any one of them, upon the trial, may be found
to meet the evidence, the court will not interfere as the object is a
legitimate one. It is a proceeding calculated to promote justice, and
cannot confuse or prejudice the accused. When, however, it is appar-
ent that the object is to prosecute for separate offenses, not based
on the same transaction, the court will not permit it to be done."
1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 371,
p 443.

In *People* v. *Andrus* (1951), 331 Mich 535, 540, the defendant
was tried under a two-count information, the first charging the crime
of murder and the second robbery not being armed with a dangerous
weapon. The defendant did not object to the joinder of the counts
in the information but sought unsuccessfully to require the prose-
cutor to elect on which count he would rely before the case was
submitted to the jury. The Michigan Supreme Court rejected
the defendant's claim of error, saying that it "overlooks the fact
that the people necessarily relied on proof of identical facts and cir-
cumstances in support of each count."

It has been suggested that the joinder of multiple offenses based
on the same conduct or arising from the same criminal episode should
be compulsory (ALI, Model Penal Code, § 1.07; Study Draft of a New
Federal Criminal Code, § 703) or an option of the defendant (ABA
Project on Minimum Standards for Criminal Justice, Standards Re-
lating to Joinder and Severance, § 1.3). See Comment, Twice in
Jeopardy, 75 Yale L J 262 (1965).

of the matter.  The question of whether Noth raped or attempted to rape Mrs. Schaaf was submitted to the first jury and he was clearly put in jeopardy on that question; the jury was told that if it found that Noth had raped or attempted to rape Mrs. Schaaf he could be convicted of first-degree murder.  Clearly a finding by the first jury adverse to him on the question whether he raped or attempted to rape Mrs. Schaaf would have jeopardized Noth.  It is empty to argue that he was not in jeopardy at the first trial on the rape question merely because he could not have been convicted of rape as a separate offense because the people chose not to charge him formally with the offense of rape.

The Double Jeopardy Clause should not be reduced to an abstraction.  Just as juries sometimes convict the innocent, they sometimes acquit the guilty.  The essence of the Double Jeopardy Clause is that even if a man is erroneously acquitted he cannot be tried again.

In *Ashe* v. *Swenson,* Mr. Justice Brennan, in a separate opinion also signed by Justices Douglas and Marshall, declared that even if Ashe's second prosecution had not been barred by the doctrine of collateral estoppel, it could not be maintained because it grew out of the same criminal episode as the first.  He expressed the view that (pp 453, 454):

" * * * the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode or transaction.  This 'same transaction' test of 'same offence' not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the consolidation in one lawsuit of all issues arising out of a single trans-

action or occurrence best promotes justice, economy, and convenience."

In expressing that view, he recognized that the test of "same offense" most commonly adopted is the "same evidence" test but, he said, the same evidence test "does not enforce but virtually annuls the constitutional guarantee" (pp 451, 452):

"For example, where a single criminal episode involves several victims, under the 'same evidence' test a separate prosecution may be brought as to each. *E.g., State* v. *Hoag* (1956), 21 NJ 496 (122 A2d 628), aff'd (1958), 356 US 464 (78 S Ct 829, 2 L Ed 2d 913). The 'same evidence' test permits multiple prosecutions where a single transaction is divisible into chronologically discrete crimes. *E.g., Johnson* v. *Commonwealth* (1923), 201 Ky 314 (256 SW 388) (each of 75 poker hands a separate 'offense'). Even a single criminal act may lead to multiple prosecutions if it is viewed from the perspectives of different statutes. *E.g., State* v. *Elder* (1879), 65 Ind 282. Given the tendency of modern criminal legislation to divide the phases of a criminal transaction into numerous separate crimes, the opportunities for multiple prosecutions for an essentially unitary criminal episode are frightening. And given our tradition of virtually unreviewable prosecutorial discretion concerning the initiation and scope of a criminal prosecution, the potentialities for abuse inherent in the 'same evidence' test are simply intolerable."

Like many other unsound rules of law, the "same evidence" test of "same offense" goes back to an old case, *The King* v. *Vandercomb* (1796), 2 Leach 708, 720 (168 Eng Rep 455, 461), decided *after* the adoption of the Bill of Rights. The English no longer follow their dubious precedent. See *Connelly* v. *Director of Public Prosecutions* [1964] AC

1254, 1353,[3] where the following appears in the report:

"There is another factor to be considered, and that is the courts' duty to conduct their proceedings so as to command the respect and confidence of the public. For this purpose it is absolutely necessary that issues of fact that are substantially the same should, whenever practicable, be tried by the same tribunal and at the same time. Human judgment is not infallible. Two judges or two juries may reach different conclusions on the same evidence, and it would not be possible to say that one is nearer than the other to the correct. Apart from human fallibility the differences may be accounted for by differences in the evidence. No system of justice can guarantee that every judgment is right, but it can and should do its best to secure that there are not conflicting judgments in the same matter. Suppose that in the present case the appellant had first been acquitted of robbery and then convicted of murder. Inevitably doubts would be felt about the soundness of the conviction. That is why every system of justice is bound to insist upon the finality of the judgment arrived at by a due process of law. It is quite inconsistent with that principle that the Crown should be entitled to re-open again and again what is in effect the same matter."

The "same transaction" test has been followed by courts in other jurisdictions.[4] New Jersey appellate

---

[3] Connelly was charged with committing a murder during a robbery. He was acquitted and then tried and convicted of robbery. His conviction was affirmed by the House of Lords because an existing procedural rule had prevented joinder of the murder and robbery charges. That rule was changed prospectively. In Michigan the rule for a long time has been that counts for murder and robbery can be joined if both charges arise out of the same transaction. See fn 2.

[4] See, e.g., Walton v. State (Tenn Crim App, 1969), 448 SW2d 690; People, ex rel. Micieli, v. Webster (1945), 269 App Div 887 (56 NYS2d 155); Burnam v. State (1907), 2 Ga App 395 (58 SE 683); State v. Bell (1933), 205 NC 225 (171 SE 50).

courts have held that a prior prosecution for murder
arising out of a robbery whether it results in con-
viction[5] or acquittal[6] bars a subsequent prosecution
for the robbery.

The Michigan Supreme Court has said as much:

"Robbery is an essential ingredient of that class
of first-degree murder defined in our statute, 3 Comp
Laws 1929, § 16708.  The robbery and murder are
held to be a single criminal act.  Therefore an ac-
quittal of either robbery or murder is a bar to the
conviction for the other.  So if Harry Leighton, the
victim of the robbery, had been killed, and the de-
fendant had been acquitted of his murder, such ac-
quittal would have been a bar to his prosecution for
robbery.  But in perpetrating the robbery in ques-
tion, the person killed was a customer who entered
the store during the progress of the robbery.
Whether he was shot during the robbery the evi-
dence does not show.  For aught that appears in
the record, he may have been killed designedly after
the robbery for the purpose of eliminating him as a
witness.  In other words, there is no showing that
the robbery and murder, which were not directed
against the same person, were the product of a
single criminal act.  While the facts of the killing
are not shown, it is significant that the information
charging the murder of which defendant was ac-
quitted was not laid under the statute which makes
killing during the perpetration of a robbery murder
in the first degree.  It charged first-degree murder
as of the common law.  It charged that defendant

---

[5] *State* v. *Fitzsimmons* (1960), 60 NJ Super 230 (158 A2d 731).
See, also, *Doggett* v. *State* (1936), 130 Tex Crim 208 (93 SW2d
399).  (Defendant previously convicted of armed robbery cannot later
be prosecuted for murder which was part of the same transaction.)

[6] *State* v. *Greeley* (1954), 30 NJ Super 180 (103 A2d 639),
*affirmed* (1954), 31 NJ Super 542 (107 A2d 439).  See, also, *State*
v. *Bell* (1933), 205 NC 225 (171 SE 50).  (Prior acquittal of charge of
conspiracy to rob held bar to subsequent prosecution for murder
where attempted robbery and homicide grew out of same transaction.)

'feloniously, wilfully, and of malice aforethought did kill and murder one Mike Vunjak.' It made no reference to the statute and no mention of robbery.[7] The murder was in some way connected with the robbery, but whether it was the same transaction or a separate and distinct criminal act does not appear. For these reasons the plea of *autrefois acquit* is not sufficient, and should be denied." *People* v. *Miccichi* (1933), 264 Mich 581, 583, 584.

Here the killing preceded the rape and, thus, the distinction made in *Miccichi,* where the Court said that the killing of the customer after the robbery may have been unconnected with the robbery for the purpose of eliminating a witness, is not apposite. Noth's purpose was to obtain a woman and, thus, the offense which here was second in chronological sequence was not a separate and independent transaction.

Here there can be no question but that the rape and the murder "were the product of a single criminal act" and that the killing and the rape were but two aspects of "the same transaction" and, there-

---

[7] In this case, as in *Miccichi,* the first information charged that the killing was committed "feloniously, wilfully and of malice aforethought" and did not mention that the killing was committed in the perpetration or attempted perpetration of another crime (robbery in *Miccichi,* rape in this case).

The intimation in the Supreme Court's opinion in *Miccichi* that the failure to charge felony murder in the information is a factor to be considered in deciding what was tried is inconsistent with other decisions of the Court. Convictions of first-degree murder have been affirmed even though the information was in the form of the informations filed in this and in the *Miccichi* cases where the people's proofs established that the killing was committed during the perpetration or attempted perpetration of a felony mentioned in the first-degree statute and the defendant had not objected to the trial of that issue on the ground that an information charging merely that the killing was committed with malice aforethought charges only second-degree murder or on the ground that he was not examined and bound over for first-degree murder. See *People* v. *Page* (1917), 198 Mich 524; *People* v. *Carlton Brown* (1970), 23 Mich App 528. That being the established rule, the form of the information is of no importance in deciding the double jeopardy question. The question is what was tried, not what was the form of the information.

fore, in this case the plea of *autrefois acquit* is sufficient.

The rule against splitting a cause of action is well established in civil actions. All claims which the plaintiff has or *could* assert against the defendant arising out of a transaction must be asserted or they will be barred by the doctrine of *res judicata.*

"In order to limit litigation and to prevent multiplicity of suits, the rule against splitting a single cause of action was designed. Under such rule, an entire claim or demand arising out of a single transaction, whether in the nature of contract or tort, cannot be divided into separate and distinct claims, and the same form of action brought for each, or two suits maintained, without consent of the defendant. In other words, a plaintiff must present his whole cause of action in one suit." 1 Michigan Law and Practice Encyclopedia, § 22, p 133.

"The plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." *Gursten* v. *Kenney* (1965), 375 Mich 330, 335.

Thus, the majority of jurisdictions, including Michigan, hold that all injuries to the person and the property of an individual resulting from a single act or transaction give rise to but one cause of action, the judgment in which will bar all future claims brought for the same act or transaction.[8] Damage

---

[8] *Tuttle* v. *Everhot Heater Co.* (1933), 264 Mich 60; *Wolverine Insurance Co.* v. *Klomparens* (1935), 273 Mich 493; *Worth* v. *Wagner* (1931), 255 Mich 433; *Coniglio* v. *Wyoming Valley Fire Insurance Company* (1953), 337 Mich 38; *Moultroup* v. *Gorham* (1943), 113 Vt 317 (34 A2d 96); *Fisher* v. *Hill* (1951), 368 Pa 53 (81 A2d 860); *Krasner* v. *O'Dell* (1954), 89 Ga App 718 (80 SE2d 852); *Warner* v. *Hedrick* (1962), 147 W Va 262 (126 SE2d 371).

to separate parcels of real property caused by the defendant's same wrongful act permit only one cause of action in favor of the aggrieved landowner.[9] A single wrongful act, even though it injures different kinds of property or several pieces of property, gives rise to a single cause of action, and, if separate actions are brought, a recovery on the one claim will bar recovery for the remainder.[10] Where several claims or demands arise under an indivisible contract, there is but one cause of action and the defendant may not be harassed by a multiplicity of suits.[11] Merely changing the theory of a unitary cause of action will not defeat the doctrine of *res judicata*.[12]

One would think that standards as high as those applied in civil litigation to avoid relitigation, harassment, and multiplicity of actions, would be applied without hesitation in the enforcement of the constitutional right of the citizen secured by the Double Jeopardy Clause in the Bill of Rights.

---

[9] *Szostak* v. *Chevrolet Motor Co.* (1937), 279 Mich 603.

[10] *Gloss* v. *Jacobs* (1952), 86 Ga App 161 (71 SE2d 253); *Vane* v. *C. Hoffberger Company* (1950), 196 Md 450 (77 A2d 152); *Chicago, I. & L. R. Co.* v. *Ramsey* (1907), 168 Ind 390 (81 NE 79); *Thisler* v. *Miller* (1894), 53 Kan 515 (36 P 1060).

[11] *Kruce* v. *Lakeside Biscuit Co.* (1917), 198 Mich 736; *Dutton* v. *Shaw* (1877), 35 Mich 431.

[12] *Bocinski* v. *Krzeminski* (1931), 253 Mich 48; *Swindlehurst* v. *American Fidelity Fire Insurance Company* (1966), 2 Mich App 329; *Corkins* v. *Ritter* (1950), 326 Mich 563; *Evans* v. *Horton* (1953), 115 Cal App 2d 281 (251 P2d 1013); *Woodson* v. *Woodson* (Fla, 1956), 89 So 2d 665; *Stucker* v. *County of Muscatine* (1958), 249 Iowa 485 (87 NW2d 452).